STEPHEN B. RUBEN (CSB#160034)
Certified Family Law Specialist
THE RUBEN LAW FIRM
625 Market Street, Penthouse
San Francisco, CA  94105
Telephone:  (415) 399-6830
Facsimile:  (415) 391-0140
sruben@rubenlawfirm.com

Attorneys for Petitioner
Thomas Guiseppe Miccio

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NORTHEN CALIFORNIA

SITTING AS A TREATY TRIBUNAL UNDER
ARTICLE III SECTION 2 OF THE UNITED STATES CONSTITUTION
CONCURRENT JURISDICTION CONFERRED BY 42 U.S.C. 11601 ET SEQ.

| | |
|---|---|
| In re the Matter of:<br><br>Thomas Guiseppe Miccio,<br><br>       Petitioner,<br>  and<br><br>Tania Darlene Miccio,<br><br>       Respondent. | ) Case No. CV-10-3976 EMC<br>)<br>)<br>)<br>)<br>) **STATUS CONFERENCE STATEMENT**<br>) **AND PROPOSED ORDER OF**<br>) **DISMISSAL WITHOUT PREJUDICE**<br>)<br>) **DATE: March 9, 2012**<br>) **Time: 10:30 a.m.**<br>) **Dept:  Courtroom 5, 17th Floor**<br>)<br>)<br>) |

THE CONVENTION ON THE CIVIL ASPECTS
OF INTERNATIONAL CHILD ABDUCTION,
DONE AT THE HAGUE ON 25 OCT. 1980 [THE CONVENTION]
---------------
INTERNATIONAL CHILD ABDUCTION REMEDIES ACT
42 U.S.C. 11601 et seq.

1.    At the last status conference, counsel for Thomas Miccio informed the Court that

THE RUBEN LAW FIRM
625 MARKET STREET
PENTHOUSE
SAN FRANCISCO, CA 94105
TELEPHONE: 415-399-6830
FAX: 415-391-0140

– 1 –

Case No.CV-10-3976-EMC    STATUS CONFERENCE STATEMENT AND PROPOSED ORDER OF DISMISSAL WITHOUT PREJUDICE

1  Thomas Miccio petition to the Supreme Court of Denmark has been denied, a copy of English

2  Translated Order and the Order in Danish is attached as **Exhibit "A."** As The Supreme Court is

3  the final court of appeal in Denmark, Thomas Miccio has exhausted all of his rights to appeal or

4  challenge the final Divorce decree entered in Denmark on August 31, 2011, a copy of which is

5  attached as **Exhibit "B."** Under the Danish Decree, Isabella is to primarily live with Tania

6  Miccio in the United States (Marin County, California) and Thomas Miccio is to have visitation

7  with Isabella from the first day after the last school day before Christmas and until the last day

8  before school starts after the first of the year. Additionally, Thomas has visitation with Isabella

9  for four weeks of summer vacation.  All of these visits are to be in Denmark.

10       2.       In my sworn declaration submitted to the Court on January 17, 2012, I informed

11  the Court subsequent to the December 13, 2011 telephonic Case Management Conference with

12  Judge Chen, I received a letter from Tania Miccio's counsel, Brent Seymour, that Tania would

13  not be permitting Isabella to return to Denmark as ordered by the Danish Court for holiday

14  visitation in 2011.  Attached hereto is a true and correct copy of Brent Seymour's December 20,

15  2011 letter as **Exhibit C.**  I am also attaching my responsive letter to Mr. Seymour dated

16  December 21, 2011 requesting compliance with the Danish Court order as **Exhibit D.**  Thomas

17  Miccio confirmed via email on January 7, 2012 (**Exhibit E**) that Tania did not permit Isabella to

18  visit Denmark for the holidays pursuant to the Danish Court order.

19       3.       Tania's refusal to comply with Danish Law was of the basis for the matters to be

20  addressed in the Supreme Court and to seek reversal of the current custody order, the other being

21  that the decision permitting her to have primary custody was inconsistent with the evidence

22  having found that in the trial courts she willfully abducted the child. However, based on the

23  dismissal of Thomas's appeal, the August 31, 2011 Divorce decree is now final. Any further

24  remedy of enforcement must be taken by Thomas Miccio either in the Danish Courts or  seek

25  enforcement of his rights for visitation by registering the Danish Decree and seek enforcement

26  under the UCCJEA provisions promulgated under Family Code section 3445 registration of

27  determination by a Court of another state, a copy of this Family Code Section is attached for the

28  Court's convenience as **Exhibit F.** Once the Danish Decree is registered, recognition and

THE RUBEN LAW FIRM
625 MARKET STREET
PENTHOUSE
SAN FRANCISCO, CA 94105
TELEPHONE: 415-399-6930
FAX: 415-391-0140

-2-

1  enforcement of determination of another state custody and visitation orders is governed under

2  Family Code section 3446 , a copy of this Family Code Section is attached for the Court

3  convenience as **Exhibit G.**

4        4.      Tania did not return the child to Thomas Miccio to visit at Christmas claiming

5  that the Danish decree does not provide for  specifics of how the costs are to be shared and the

6  logistics of the actual travel arrangements between Denmark and the United States for Isabella.

7  Regarding the actual travel arrangements and Under Danish Family law, there is a need for the

8  parties to have "Statsvahningen" ruling from the Danish Court determine these allocation of

9  costs and travel logistics.

10       5.      I have been advised by Thomas Miccio's Danish counsel that typically the non-

11  custodial parent is responsible for picking the child up in the United States and flying with the

12  child to Denmark. The custodial parent is then responsible for picking up the child in Denmark

13  and returning with the child to the United States. The costs are generally shared equally unless

14  economic circumstances warrant a different allocation. Thomas's counsel will be commencing

15  these proceedings in Denmark so that there is clarity on these matters. Thus, the Statsvahningen

16  issue is the only matter that has yet to be resolved and for which this court has no jurisdiction to

17  consider it.

18       6.      Given the final ruling from the Danish Supreme Court proceedings, there is

19  simply no reason to proceed under the Hague convention as Tania Miccio has the lawful right to

20  have Isabella here in the United States. Accordingly, the Hague Proceedings are therefore moot

21  and should be dismissed without prejudice.

22  **Legal Analysis**

23       7.      Under Rule 41 (a) 2 of the Federal Rules of Civil Procedure, this Court has

24  authority to dismiss  this case without prejudice. The action that has been filed and pending

25  before this court by Thomas Miccio is a Hague convention Petition for the return of the minor

26  child who has been wrongfully retained in the United States.  Tania has not pleaded a

27  counterclaim nor is a counterclaim available under the Hague convention.  Tania is not

28  prejudiced in any manner as the Danish Court has authorized her to remain here in California as

THE RUBEN LAW FIRM
625 MARKET STREET
PENTHOUSE
SAN FRANCISCO, CA 94105
TELEPHONE: 415-389-6630
FAX: 415-391-0140

– 3 –

Case No.CV-10-3976-EMC                    STATUS CONFERENCE STATEMENT AND PROPOSED ORDER OF DISMISSAL WITHOUT PREJUDICE

1   the primary custodial parent subject to visitation ordered to Thomas.

2   　　　8.　　　This Court must be mindful of the findings by the Danish Court in the August 31,

3   2011 Divorce Decree that Isabella was wrongfully abducted as was clearly noted in the Court's

4   argument and decision as follows:

5   　　　"The parties have joint parental responsibility of the child of the marriage. Following

6   　　　Thomas Guiseppe Miccio'S statement, the court considers that Tania Darlene Miccio

7   　　　together with the child of the marriage left Denmark in the summer of 2010 on the pretext

8   　　　of a holiday trip and without any agreement that they would not return. The child of the

9   　　　marriage must therefore have been abducted abroad illegally and retained there. Danish

10  　　　Courts therefore have the jurisdiction to try the parental responsibility case. The Danish

11  　　　Administration of Justice Act #448 f, Section 1, nos. and 2 and that Danish Jurisdiction is

12  　　　applied."

13  　　　Despite this factual and legal finding of child abduction against Thomas Miccio's

14  custodial rights for which he was prejudiced, the Danish Court permitted Tania to remain with

15  Isabella here within this Court's jurisdiction in Marin County subject to the clear directive that

16  visitation " with the child must be carried out in a such a way that the father and child will have

17  the possibility to have a normal daily life together for some and also that the child in the

18  visitation period will have the opportunity to get to know her Danish relatives and Danish

19  society."

20  　　　9.　　　Additionally, Tania's rights have in no manner been prejudiced at all by a

21  voluntary dismissal as she did not incur any substantial effort or expense in preparation for trial.

22  In fact, the discovery plan in place was never implemented with the exception of the taking of

23  Thomas's deposition. All other discovery was stayed pending the final ruling of the Danish court

24  in the divorce proceedings. Thus, Tania has not been prejudiced as her and her counsel's efforts

25  have been minimal with respect to preparation for trial. FCIC  966. F 2d at 1142,

26  　　　10.　　　However, a dismissal with prejudice of the Hague Petition would result in an

27  adjudication of the merits of the Hague convention and results in a complete abrogation of the

28  Danish Court's finding and order for which this Court must give full faith and credit under the

THE RUBEN LAW FIRM
625 MARKET STREET
PENTHOUSE
SAN FRANCISCO, CA 94105
TELEPHONE: 415-399-6630
FAX: 415-391-0140

– 4 –

United States Constitution.  As the Danish Court had both subject matter and personal

jurisdiction over the parties, the Danish Decree regard Tania's wrongful removal is not subject to

any collateral attack by Tania. *Marriage of Halpern* (1982) 133 Cal.App3d 305, 184 Cal.Rptr. at

744.

11.      Irrespective of the Danish Court's finding of Tania's wrongful abduction and

retention, Thomas is not seeking any reimbursement for attorney fees under USCS 11603 in

commencing and prosecuting this Hague Convention. In summary, federal enabling legislation

expressly grants our federal courts arising under the Hague Convention to address a wrongful

abduction or retention of a minor child pursuant to 42 USC section 11603(a).  Any underlying

custody dispute must be litigated in accordance with state law. 42 USC section 11604.  Given

now the finality of the Danish divorce decree, there is no reason to proceed any further with

these Hague proceedings.

Dated:  February 29, 2012

Stephen B. Ruben
Attorney for Petitioner Thomas Miccio

## ORDER

For the reasons explained above, Petitioner's Application for Order of Dismissal Without

Prejudice is <u>GRANTED.</u>  In addition, both parties shall be responsible for their own attorney

fees and costs.

It is so ORDERED this ____6th____ day of March, 2012

EDWARD
United States
Northern D

IT IS SO ORDERED

Judge Edward M. Chen

– 5 –

STATUS CONFERENCE STATEMENT AND PROPOSED ORDER OF DISMISSAL WITHOUT PREJUDICE

THE RUBEN LAW FIRM
625 MARKET STREET
PENTHOUSE
SAN FRANCISCO, CA 94105
TELEPHONE: 415-399-6830
FAX: 415-391-0140



Official translation from Danish

of

Dismissal of Petition to Appeal in the 3rd Instance

EXHIBIT A

Official translation from Danish by state-authorised translator and interpreter Eva Harbo Andersen

Procesbevillingsnævnet
(Danish Board of Appeals)

RECEIVED
30 JAN. 2012

File no. 2011-23-0064
Case officer: Mette Hansen
27 January 2012

Ms Kirstine Kryger Dyekjær, attorney-at-law
Margrethepladsen 4, Plan 4
Postbox 260
DK-8100 Århus C

Dear Madam,

Your file no. 01-62931, Thomas Guiseppe Miccio

On 18 November 2011, in your capacity as attorney to Mr. Thomas Guiseppe Miccio, you filed a petition with the Danish Supreme Court for allowance of appeal in the 3rd instance against a judgment delivered by the High Court of Western Denmark in a case between your client and Ms. Tania Darlene Miccio concerning custody of and domicile for Isabella.

The petition was considered at the meeting held by the Board on 25 January 2012.

Pursuant to the second sentence of section 317(1) of the Danish Administration of Justice Act, the Board of Appeals can allow review in the 3rd instance of a judgment delivered by a high court if the case is of general public importance.

Based on the information in the above case and the supportive information provided, this Board finds that the said condition has not been satisfied. The Board of Appeals therefore dismisses your petition.

On behalf of the Board

(Signed )
Lisbeth Feldvoss
Chief consultant

Rådhuspladsen 45-47, 4. sal    DK-1550 København V    Tel. +45 3 12 13 20   Fax: +45 33 12 10 77

## Judgment

**Delivered on August 31st 2011**

BS 10-303/2011 and

BS 10-304/2011

Thomas Guiseppe Miccio
Arnakvej 44
8270 Højbjerg
(Attorney Kirstine Dyekjær as appointed counsel)

Versus

Tania Darlene Miccio
508 Shoreline Kwy, Mill Valley
CA 94941
USA
(Attorney Kirsten Rødding Schmidt as appointed counsel)

**BS 303/2011 Matrimonial Proceedings**

The petitioner, Thomas Guiseppe Miccio, has made the claim against the defendant Tania Darlene Miccio, that the marriage be dissolved through a divorce, cf. The Danish Marriage Act § 36 on the terms that neither of the parties pay alimony to the keep of the other one, and that neither of the parties pay compensation to the other part according to the Danish Marriage Act § 56.

The respondent has primarily contended that the case be dismissed, alternatively that the parties separate, cf. The Danish Marriage Act § 29, on the terms that neither of the parties pay alimony to the other one's keep and that neither of the parties pay compensation to the other one according to the Danish Marriage Act § 56.

**BS 304/2011 Case of Parental Responsibility**

**Parental responsibility**
The petitioner, Thomas Guiseppe Miccio, has primarily made the claim that the joint parental responsibility for Isabella Anna Miccio, civil registration number 060506-7050 is to be terminated and that in the future it is given to him solely and with residence with him.

Thomas Guiseppe Miccio has alternatively made the claim that the joint parental responsibility is retained and that Isabella in the future is to reside with him.

The respondent, Tania Darlene Miccio, has primarily contended that the case be dismissed, alternatively that the joint parental responsibility for Isabella and the parental responsibility be given solely to her.

Tania Darlene Miccio has further alternatively made the claim that the joint parental responsibility is kept and that Isabella in the future is to have residence with her.



EXHIBIT B

## Visitation Rights

As far as visitation rights are concerned, Thomas Guiseppe Miccio has made the claim that in the case where the parental responsibility is given to him solely, or if the court decides to let Isabella have residence with him, then Tania Darlene Miccio will in the future have the right of visitation with Isabella here in Denmark for four weeks every summer vacation within the school summer vacation period and for one week in Denmark in connection with the Christmas and New Year vacation.

If the court decides that the parental responsibility is given to Tania Darlene Miccio or if the court decides that Isabella is to reside with her, then Thomas Guiseppe Miccio makes the claim for visitation rights with Isabella for 7 weeks in the school's summer vacation and also the Christmas and New Year holiday from the last school day before Christmas and until the last day before schools start up after New Year.

As far as the visitation rights are concerned Tania Darlene Miccio has made that claim that in the case where the parental responsibility is given to Thomas Guiseppe Miccio or if the court decides that Isabella is to reside with him, then she is to have the right of visitation with Isabella for 7 weeks in the school summer vacation and the Christmas and New Year vacation from the last day before Christmas until the last day before the first school day after New Year. The visitation can take place at a place chosen by Tania Darlene Miccio.

## Particulars in the case

Thomas Guiseppe Miccio is an Italian citizen, but has lived all his life in Denmark. Tania Darlene Miccio is an American citizen. The parties married on 26th March 2005 in California and spent the following couple of years in California.

The child of the marriage, Isabella Anna Miccio, was born on May 6th 2006. In March 2008 Thomas Guiseppe Miccio returned to Denmark to settle. In October 2008 Tania Darlene Miccio came to Denmark with the daughter. The parties are not in agreement as regards whether this was with a view to staying permanently. It appears that both spouses and the daughter have been registered as living at the same address in Denmark from December 2008.

In the summer of 2010 Tania Darlene Miccio travelled to the USA with the daughter. It appears that on July 14th 2010 she filed for separation from the Californian court with the claim partly for separation and partly for continued joint parental responsibility, so that she alone had 'the physical parental responsibility' for the daughter, while Thomas Guiseppe Miccio should have the right of visitation.

Faced with this Thomas Guiseppe Miccio made the claim of 'annulment' (dismissal) as a consequence of lack of jurisdiction.

In October 2010 Thomas Guiseppe Miccio filed a claim with the Department of Family Affairs as the central authority according to the Hague Convention, because he considered Tania's behavior to be an abduction of the daughter. The American central authority has not yet made a decision in the case.

The Superior Court of California made a decision in this case on November 16th 2011 [sic] and stated among other things:

The various cases cited by Tania are not on point with the facts in this case. Thomas has not consented to Californian jurisdiction based on both subject matter jurisdiction or personal jurisdiction. In review also

of the factors set forth in CCP § 410, 10 for consideration in deciding whether the court may exercise jurisdiction over his person, the court does not find sufficient evidence that Thomas has substantial, continued, systematic and purposeful ties with California or the USA. Accordingly the motion filed by Thomas to quash summons for lack of personal jurisdiction is granted. (CCP § 418,10).

### The Hague Proceedings

On August 9th 2010 The court reviewed the letter from the Office of Children's Issues, US Department of State, which is the American Central Authority with regard to the Hague Convention of the Civil Aspects of International Child Abduction, in which it is said that an application for the return of the parties' daughter to Denmark has been received by the Department of State.

The court also received and reviewed a civil action, CV 10 3976 "Complaint for return of Child to Petitioner pursuant to 42 U.S.C § 11601 f/ff and the response thereto filed with the United States District Court for the Northern District of California, and respective points and authorities.

Article 16 of the Hague Convention (signed by the U.S. and Denmark in July 1991) requires that when a court considering custody of a child has received notice that an application for return of a child under the Convention has been received, it should defer any decision on the merits of rights of custody until an appropriate federal or state court has determined that the child is not to be returned under the Convention.

Under the circumstances, the Petition for Legal Separation and its requests to this court for relief are stayed to permit the Hague proceedings to proceed without intervention.

On October 1st 2010 Thomas Guiseppe Miccio had sent a request to the Regional State Administration in Central Jutland for a dissolution of the marriage and for a decision on the parental responsibility and visitation rights. After the American court had reached a decision on November 16th 2011 [sic], the Regional State Administration in Central Jutland made the decision on February 1st 2011 that the cases could be brought for the courts in Denmark, since the Regional State Administration of Central Jutland found that there was international jurisdiction to deal with the martial case in Denmark pursuant to the Danish Administration of Justice Act § 448 c, and it was also found that pursuant to the Danish Administration of Justice Act § 448 f there was also international jurisdiction for dealing with the question of the placing of the parental responsibility, visitation rights etc.

The main hearing of the case was held on August 12th 2011, where Tania Darlene Miccio did not attend.

After the main hearing Thomas Guiseppe Miccio's attorney requested to present further exhibits, which the attorney for the petitioner allowed.

It appears from this that the parties in connection with the hearing of the case of the Hague Convention on August 22nd 2011 have participated in a conference headed by evaluator Harold J. Mcelhinny, who has concluded that "returning Isabella to Denmark will (not) expose her to a grave risk of physical and psychological harm".

### Representations

homas Guiseppe Miccio has explained that he is a qualified orthopedic surgical appliance maker and has as his business to make appliances of aid for handicapped people. His present employment began when he returned to Denmark in March 2008. It is a full time job, with flexible working hours and very limited travel activity. At the moment he is staying with his parents as a result of the huge costs he has had due to the

litigation case in America, which so far has cost him ca. 400,000 DKK. In the long run he plans to buy property when he has decided which area of Denmark he wants to settle in. He believes that he is fully capable of organizing and planning his day and his accommodation so that he can be a responsible parent for Isabella. He has an arrangement with his employer that he can take a long holiday when Isabella returns to Denmark.

He has said about the relationship between the parties that he met Tania on a holiday in the USA in 2004. After this they met regularly in both the USA ad Europe  before he was given a so-called engagement visa. This visa gave them 3 months to be married in. He entered the USA on this visa on January 16th 2005, and the couple were married in March 2005. He moved in with Tania, who lived in property close to her parents. About a year passed before he was given a work permit. Once he could work he found a job as a football coach and started a small business organizing beach football. Tania was at this time active as a realtor, popular and earning really good money. He was in full agreement that in connection with the marriage a marital agreement should be drawn up so that in the case of a divorce Tania could withdraw the assets she had when they were married. It was also planned that they would have a child, and the birth went as expected, although it changed their lives. Despite the fact that they had grown up in different parts of the world, and Tania has a German background, their values as regards child rearing were pretty similar. When Isabella was young, they both looked after her. He had a lot of time and his mother-in-law also helped  with the child care.

It has been often considered  that they would move back to Denmark at some point – at least to try it out. This was due to – among other things that the educational possibilities would be so much better for the daughter in Denmark. Tania has at no point excluded this, but said that it would need to be looked at. Gradually their finances deteriorated due to the financial crisis, and Tania's assets dropped in value. It was Tania's wish that he should accept a substantial share of the maintenance duty, and based on this he went back to Denmark, where they agreed to him moving in with his parents to save money so that they could buy a car and have money for a deposit on an apartment. In the summer of 2008 he went on a holiday in California. Tania arrived in Denmark in October 2008, whereupon they stayed for 2 months with his parents.  They found an apartment as of December 1st 2008. This was an apartment that Tania had found after driving round in the area. Tania was in Denmark as a result of the rules for family reunification, and Tania started to learn Danish.  He has said that it would be all right if she wanted to qualify herself in Denmark. He had no expectations that she should work and be responsible for the maintenance of the family. Isabella started immediately in an integrated institution, but changed after one month to a smaller, but very good institution where she stayed until Tania travelled with her to the USA last summer.

At one point the parties considered buying a house. This is clear from the exhibits that Tania had looked at a house in the price range concerned. Tania looked at many houses. Their plans for a house purchase rested on his income alone, the savings he had and on some possible assistance from his parents. He was fully aware that it would be difficult for Tania to find employment in Denmark. When questioned as to why Tania drove around on a Danish driving license he explained that to begin with she had used her American license, but that a cousin had drawn their attention to the fact that Californian license was not legal in Denmark.
He was himself an Italian citizen. His father was an Italian and his mother a Dane, but he has spent all his life in Denmark. He had not had any sense of Tania not settling in Denmark. She had been here many times before and for long periods and had a circle of friends. There was no doubt that she missed her family, and she had said that it was hard to live in Denmark. She has always lived close to her parents. She has not expressed directly that she missed them so much that they should reconsider their stay in Demark.
In the period from October 2008 to the summer of 2010 Tania was in the USA 3 times – every time with Isabella.

She stayed in the USA between 3 to 5 weeks. She put pressure on him to let her go home and he did not protest.

Regarding the marital relations he has explained  that he often started work early, and that Tania brought Isabella to the kindergarten before she went off to the language school. From his point of view they shared the tasks of caring for Isabella. He looked after her when Tania had to do her homework. Their life in Denmark was somewhat different from the life they had had in the USA where they had had more help in their house.  He did not suspect that she was planning to stay on, when she went off to the USA for a vacation in 2010. They had regularly discussed their relationship and where to live. He did not realize her intentions until he received a registered letter at the end of July with the complaint and summons from the American court. He discussed it with a friend and spoke the next day to Tania on the phone. She just said that he was to contact a lawyer. He then realized that she had taken all her things with her when she left for the USA. He has tried to keep in touch with her to find a solution without the lawyers, but he has not been successful. When he realized all this, he contacted the department of Family Affairs and filled in a complaint form regarding child abduction. He also found an attorney in San Francisco after a search on the internet. The decision from November 16th 2010 by the American court has not been appealed. At one point he has tried to set up a video conference, but without success. He has not seen Isabella since the summer of 2010, as he has been dissuaded from applying for visitation in the USA and entry into the USA. This is due to the claims of violence that Tania has listed in her divorce petition. He has talked to Isabella via Skype about a couple of times a week. Isabella spoke Danish with him and in the kindergarten and English with her mother. Now they speak English together. The Danish language is slowly disappearing. The first conversations with Isabella she asked about  the situation and did not seem to know that the situation was permanent. He can no longer describe his daughter, he is too emotionally affected and he has not been together with her for a year.

If he is given the parental responsibility or the right of residence for Isabella, he has made certain that she can return to her former kindergarten. He had considered moving back to the USA, but has given up for a number of reasons. He no longer believes in the joint parental responsibility. Things have gone too far. It would give Isabella better possibilities to live in Denmark that in the USA. There is more social security and a better educational system. He believes that he has tried to develop a deep relationship with Isabella. He has considered what kind of values he wants to give his child. If Isabella is to live with him, he will cut down his working hours. He wants visitation in Denmark for fear of what Tanias may have of ideas if the child is to have visitation with her mother in the USA. Their mutual confidence has been broken.

When questioned by Kirsten Rødding Schmidt, attorney, he explained that in the USA they had lived in a house that Tania had rented from her parents. The assets that are mentioned in the marital agreement are an apartment house that Tania owned. Regarding his accommodation and addresses from February 2nd 2003 to December 1st 2008 he explained that he had kept his address with his parents when he lived in the USA. Isabella had not been minded outside the home for the first year. In the later period before he returned to Denmark in  March 2008, she had been a few hours in a playgroup on a daily basis. If he is to compare himself with Tania, she is a lot more materialistic that he is. When he left, he sold his assets and gave the money to Tania, so that she could manage to live. There are advantages and disadvantages of life in both USA and Denmark. They made a decision to go back to Denmark, but he cannot say that it was a decision  for ever. It was  to see how things developed. The primary reason was the Danish educational system ,and as far as he was concerned for Tania to move away from her parents. Tania had the wish that she should start all over again when they came to Denmark and therefore she only brought personal clothes and other personal effects. Tania's home in California was let furnished. When they rented an apartment in Denmark it was with a private landlord and a limited lease. Isabella started in a kindergarten after a few months. Their relationship took a turn for the worse when Tania arrived in October 2008 — partly because they were staying with his parents. It was not the best solution but they managed. He felt that they were happier when they moved into

their own apartment. They were maybe no longer in love, but he felt that things were fine. He had not considered that their relationship would be changed by Tania's long periods in the USA. It was a natural thing and helped to open Tania's eyes to the differences between the USA and Denmark. The accusations that appear in the petition about a fall down some stairs and other things are complete fabrication. He denies that he has ever laid hands on Tania or Isabella.

The Civil Affairs Agency has granted the petitioner free legal aid.

The court has appointed counsel for the respondent.

**The views of the parties**

Thomas Guiseppe Miccio's attorney has in her pleading regarding the dissolution of the marriage set out among other things that Tania Darlene Miccio has illegally taken the child of the marriage, Isabella, out of Denmark and is now illegally keeping her in the USA, which is why Thomas Guiseppe Miccio, pursuant to the Danish Marriage Act § 36, has the right to a divorce, as the request for this has been delivered in time. It is furthermore claimed that neither of the parties have a right to alimony, cf. The Danish Marriage Act § 50.

Regarding the question of the parental responsibility is has been alleged that it is best for Isabella that the parental responsibility for her is given solely to Thomas Guiseppe Miccio, and especially that he is the one of the parties best suited to carry out the parental responsibility for Isabella, and is best suited to give Isabella security, stability and care, and that Isabella will have the best possibilities when growing up in Denmark. Tania Darlene Miccio has chosen to abduct Isabella to the USA and has thereby shown that she is not able to cooperate with the father about Isabella, and that she places her own interests above those of her child. Thomas Guiseppe Miccio is the one of the two parties who is better at cooperating around Isabella and at securing the best parental contact. It will therefore be best for Isabella that the parental responsibility for her is given to him and that she lives with him. There is a need for a decision in Denmark despite the pending trial in the USA pursuant to the Hague Convention, since the American way of process means that a return of Isabella to Denmark will be drawn out, where as a Danish decision will aid the American process.

Thomas Guiseppe Miccio's claim for visitation rights is based on The Parental Responsibility Act § 19 as it is alleged that he wants Isabella to have two parents, but considering that Tania has moved back to the USA, it is not possible to establish regular visitation. Tania has shown that she does not restrain herself from illegally keeping Isabella in the USA, and that visitation should not take place in the USA, but in Denmark. The visitation cannot be more comprehensive than claimed, unless Tania agrees to move to Denmark.

Tania Darlene Miccio's lawyer has set out against this that Tania Darlene Miccio already on July 14th 2010 filed for separation and parental responsibility in the USA. This case was thus started before Thomas Guiseppe Miccio contacted the Regional State Administration in Central Jutland in this case. The present case must be rejected by the court as long as the extradition case in accordance with the Hague Convention in the USA has not been decided. Isabella has not been illegally abducted or illegally kept abroad which is a condition for a Danish court to have jurisdiction in accordance with § 448 F section 1 no. 2 to try a parental responsibility case.

In support of the subsidiary claim it is set out that it will be best for Isabella that the mother solely is given the parental responsibility, since the present case along with the case concerning the Hague Convention has led to such a level of conflict between the parents that the joint parental responsibility must be terminated. It will in all circumstances be best for Isabella to have permanent residence and thus domicile with the mother.

**The Court's argument and decision**

Following from Thomas Guiseppe Miccio's explanation and the exhibits produced the court considers that Tania Darlene Miccio had come to Denmark in October 2008 together with Isabella with the purpose that the parties and the child of the marriage were to settle in Denmark. The Danish courts therefore have the jurisdiction to try the matrimonial proceedings cf. the Danish Administration of Justice Act § 448 c, and that Danish jurisdiction is applied.

The parties have joint parental responsibility of the child of the marriage. Following Thomas Guiseppe Miccio's statement the court considers that Tania Darlene Miccio together with the child of the marriage left Denmark in the summer of 2010 on the pretext of a holiday trip and without any agreement that they would not return. The child of the marriage must therefore have been abducted abroad illegally and retained there. Danish courts therefore have the jurisdiction to try the parental responsibility case cf. The Danish Administration of Justice Act § 448 f, section 1, nos. 1 and 2, and that Danish jurisdiction is applied.

It is thus without importance that Thomas Guiseppe Miccio has started an child abduction case since as a consequence of the provisions mentioned he prevails in his claim that the case is tried in Denmark and following Danish jurisdiction.

The respondent's demurrer is thus not allowed.

Following Thomas Guiseppe Miccio's statement and the particulars of the case in general the conditions for a dissolution of the marriage pursuant to the Danish Marriage Act § 36 are thus satisfied.

Tania Darlene Miccio has not made a statement in the case, but according to his statement the court considers it satisfactorily proven that both parents are fully capable of looking after the needs of the child and that they both were involved in the care of the child until Tania Darlene Miccio's departure in the summer of 2010. The father has since regularly tried to establish and keep contact to the child, among other things via Skype. Despite the geographical distance the court does not find that weighty reasons have been found to abolish the joint parental responsibility.

It appears that Isabella who was born in May 2006 lived with both her parents until March 2008 when Thomas Guiseppe Miccio returned to Denmark, and again from October 2008 until the summer of 2010. In the latter period the child was on three long holidays in California with her mother without the father. Based on an assessment of the combined information in the case the court thinks that it will be best for the child to have residence with the mother.

The court has in placing the visitation rights stressed that visitation with the child must be carried out in such a way that father and child will have the possibility to have a normal daily life together for some time and also that the child in the visitation period will have the opportunity to get to know her Danish relatives and the Danish society.

**The Judgment of the court is:**

The marriage between Thomas Guiseppe Miccio and Tania Darlene Miccio is to be dissolved.

The Parties are to have joint parental responsibility of Isabella Anna Miccio, the child of the marriage, born on May 6th 2006.

The child is to live with the respondent, Tania Darlene Miccio.

The petitioner, Thomas Guiseppe Miccio, is to have visitation with the child every year in the school summer vacation for 4 weeks.

Every year Thomas Guiseppe Miccio is to have visitation with the child from the first day after the last school day before Christmas and until the last day before school start after the New year.

The visitation is to take place in Denmark.

Neither of the parties will pay the cost to the other or to the State.


Ingrid Thorsboe


This is certified to be a true copy.

The Court in Aarhus
September 1st 2010

Lissi Christensen
Attorney-in-fact

Politifolk nr. 974

Hanna
Broadbridge

Police Interpreter No. 974

Case 3:10-cv-03976-EMC Document 61 Filed 03/06/12 Page 16 of 22

# THORN · SEYMOUR · MEHMET
## AN ASSOCIATION OF ATTORNEYS INCLUDING A COPRORATION

SCHAPIRO THORN, INC.

SUZIE S. THORN, ESQ.
CERTIFIED FAMILY LAW SPECIALIST
(STATE BAR OF CALIFORNIA)
CERTIFIED FELLOW, AMERICAN ACADEMY OF MATRIMONIAL LAWYERS
CERTIFIED FELLOW, INTERNATIONAL ACADEMY OF MATRIMONIAL LAWYERS

December 20, 2011

BRENT D. SEYMOUR, ESQ.
CERTIFIED FAMILY LAW SPECIALIST
(STATE BAR OF CALIFORNIA)

**WITHOUT PREJUDICE – FOR SETTLEMENT PURPOSES ONLY**

YASMINE S. MEHMET, ESQ.
CERTIFIED FAMILY LAW SPECIALIST
(STATE BAR OF CALIFORNIA)
BARRISTER AND SOLICITOR OF THE BRITISH COLUMBIA BAR

Via Facsimile and U.S. Mail
Stephen B. Ruben, Esq.
The Ruben Law Firm
625 Market Street, Penthouse
San Francisco, CA 94105

Re:     Miccio v. Miccio

Dear Mr. Ruben:

Thank you for your letter of December 19, 2011. As you are aware, the purpose of the Hague action pending in the U.S. District Court is to determine whether the U.S. or Denmark has jurisdiction to determine custody issues for these parties. No decision has yet been made by the District Court. Nevertheless, Thomas proceeded with a custody hearing in Denmark. The result of that was a decision giving Tania primary custody and Thomas visitation. Thomas appealed and that decision was affirmed. We are now informed that Thomas is appealing again to the Danish Supreme Court. Thomas' position is that he does not agree with the Danish order and he will not dismiss the Hague action. In addition, we are informed that Thomas caused the police to come to Tania's Danish attorney's office to question her about Tania and the alleged abduction of Isabella.

It is unclear to me why Thomas expects that Tania will submit to the jurisdiction of the Danish court, when Thomas himself does not accept the order and continues his Hague action to determine which country has jurisdiction.

Moreover, Thomas has made no effort, that I am aware of, to facilitate the Christmas visitation. The Danish order does not specify who would be responsible for bringing Isabella to Denmark for the visitation and returning her to California afterwards. Nor does the order specify who is responsible for the cost of Isabella's airfare. It is my understanding that the parties have not had any discussions about these issues. Furthermore, Tania's Danish attorney has attempted to contact Thomas' Danish attorney for over a week and only yesterday did she receive a reply.

Given the above facts, and especially given that the status of the order itself is unclear due to Thomas' further appeal, Tania does not feel that there is sufficient time to arrange for Christmas visitation in Denmark this year. Tania will not come to Denmark herself given the recent police inquiries, the assurances of Thomas' Danish attorney notwithstanding. Tania has

EXHIBIT C



# T H O R N • S E Y M O U R • M E H M E T
### AN ASSOCIATION OF ATTORNEYS INCLUDING A COPRORATION

Stephen B. Ruben, Esq.
December 20, 2011
Page 2

### WITHOUT PREJUDICE – FOR SETTLEMENT PURPOSES ONLY

offered that Thomas can have his Christmas visitation in California and Tania will pay half of his airfare. In the alternative, Tania offers that the visitation can be made up at the Easter break in Denmark. That would give the parties sufficient time to make arrangements for Isabella's transportation and implement appropriate safeguards/stipulations with the courts.

In an effort to settle this matter, Tania will accept the jurisdiction of the Danish court if Thomas will withdraw any further appeals and accept the current Danish order. Thomas must also dismiss the Hague action filed in the U.S. District Court. Absent these dismissals, it is still undecided which country has jurisdiction until the U.S. District Court rules.

Very truly yours,
THORN•SEYMOUR•MEHMET

Brent D. Seymour

cc:      Tania Miccio

**THE RUBEN LAW FIRM**
A PROFESSIONAL CORPORATION

December 21, 2011

**Via E-Mail and Facsimile**
Brent D. Seymour, Esq.
Thorn-Seymour-Mehmet
1242 Market Street, Fifth Floor
San Francisco, CA 94102

Re:     Marriage of Miccio

Dear Mr. Seymour:

We have reviewed your "settlement letter" and take exception to this communication as exclusionary under the California Evidence Code. We chose not to address any of your proposed "settlement" or any of your legal contentions as these issues are matters before the Danish Court and the Hague Petition pending in the Northern District of California, the United States District Court here in San Francisco.

We are profoundly disappointed that Isabella will not be with her father and her Danish family during Christmas.

Sincerely,

THE RUBEN LAW FIRM

Stephen B. Ruben

EXHIBIT D



From: Thomas Miccio <thomasmiccio@gmail.com>
Date: Sat, 7 Jan 2012 00:28:12 -0800
To: Deneen Consagra <dconsagra@rubenlawfirm.com>
Subject: Re: Miccio - status

Deneen,

It is hereby confirmed in writing that Isabella was not in denamrk for the Holidays.


Best regards

Thomas

On Fri, Jan 6, 2012 at 6:58 PM, Deneen Consagra <dconsagra@rubenlawfirm.com> wrote:

Happy New Year Thomas, Steve asked me to contact you to confirm Isabella did not come visit for the holidays.  I know it is a silly question, however, we simply need to be sure to know the next steps we need to take on this end.  Please respond as soon as possible.  Thank you and take care.


Best regards,


Deneen M. Consagra

Senior Paralegal and Office Manager

The Ruben Law Firm
625 Market Street, Penthouse
San Francisco, CA 94105
dconsagra@rubenlawfirm.com
p.  415.399.6830
f.  415.391.0140

Cell 925.917.9431


The Information



EXHIBIT E

193

*Remedies for Enforcement of Custody and Visitation Orders § 142.102. Cal. Fam. Law Practice & Procedure 2d (Matthew Bender®), ch 142, Special Remedies for Enforcement of Custody and Visitation Orders § 142.103. Cal. Forms Pleading & Practice (Matthew Bender®) ch 260 "Family Law Enforcement: Foreign Judgments". Cal. Forms Pleading & Practice (Matthew Bender®) ch 394 "Parent and Child". 10 Witkin Summary (10th ed) Parent and Child §§ 184, 185.*

## § 3444. Temporary order by court lacking jurisdiction to modify

(a) A court of this state which does not have jurisdiction to modify a child custody determination may issue a temporary order enforcing either:

(1) A visitation schedule made by a court of another state.

(2) The visitation provisions of a child custody determination of another state that does not provide for a specific visitation schedule.

(b) If a court of this state makes an order under paragraph (2) of subdivision (a), it shall specify in the order a period that it considers adequate to allow the petitioner to obtain an order from a court having jurisdiction under the criteria specified in Chapter 2 (commencing with Section 3421). The order remains in effect until an order is obtained from the other court or the period expires. Added Stats 1999 ch 867 § 3 (SB 668).

➡ *Cal. Fam. Law Practice & Procedure 2d (Matthew Bender®), ch 32, Jurisdiction to Determine Custody and Visitation § 32.30. Cal. Fam. Law Practice & Procedure 2d (Matthew Bender®), ch 32, Jurisdiction to Determine Custody and Visitation § 32.49. Cal. Fam. Law Practice & Procedure 2d (Matthew Bender®), ch 142, Special Remedies for Enforcement of Custody and Visitation Orders § 142.100. Cal. Fam. Law Practice & Procedure 2d (Matthew Bender®), ch 142, Special Remedies for Enforcement of Custody and Visitation Orders § 142.101. Cal. Fam. Law Practice & Procedure 2d (Matthew Bender®), ch 142, Special Remedies for Enforcement of Custody and Visitation Orders § 142.103. Cal. Fam. Law Practice & Procedure 2d (Matthew Bender®), ch 142, Special Remedies for Enforcement of Custody and Visitation Orders § 142.106. Cal. Forms Pleading & Practice (Matthew Bender®) ch 260 "Family Law Enforcement: Foreign Judgments". Cal. Forms Pleading & Practice (Matthew Bender®) ch 394 "Parent and Child". 10 Witkin Summary (10th ed) Parent and Child § 185.*

## § 3445. Registration of determination by court of another state; Notice of registration and its consequences; Hearing; Confirmation of order

(a) A child custody determination issued by a court of another state may be registered in this state, with or without a simultaneous request for enforcement, by sending all of the following to the appropriate court in this state:

(1) A letter or other document requesting registration.

(2) Two copies, including one certified copy, of the determination sought to be registered, and a statement under penalty of perjury that to the best of the knowledge and belief of the person seeking registration the order has not been modified.

(3) Except as otherwise provided in Section 3429, the name and address of the person seeking registration and any parent or person acting as a parent who has been awarded custody or visitation in the child custody determination sought to be registered.

(b) On receipt of the documents required by subdivision (a), the registering court shall do both of the following:

(1) Cause the determination to be filed as a foreign judgment, together with one copy of any accompanying documents and information, regardless of their form.

(2) Serve notice upon the persons named pursuant to paragraph (3) of subdivision (a) and provide them with an opportunity to contest the registration in accordance with this section.

(c) The notice required by paragraph (2) of subdivision (b) shall state all of the following:

(1) That a registered determination is enforceable as of the date of the registration in the same manner as a determination issued by a court of this state.

(2) That a hearing to contest the validity of the registered determination must be requested within 20 days after service of the notice.

(3) That failure to contest the registration will result in confirmation of the child custody determination and preclude further contest of that determination with respect to any matter that could have been asserted.

(d) A person seeking to contest the validity of a registered order must request a hearing within 20 days after service of the notice. At that hearing, the court shall confirm the registered order unless the person contesting registration establishes any of the following:

(1) That the issuing court did not have jurisdiction under Chapter 2 (commencing with Section 3421).

(2) That the child custody determination sought to be registered has been vacated, stayed, or modified by a court having jurisdiction to do so under Chapter 2 (commencing with Section 3421).

(3) That the person contesting registration was entitled to notice, but notice was not given in accordance with the standards of Section 3408, in the proceedings before the court that issued the order for which registration is sought.

(e) If a timely request for a hearing to contest the validity of the registration is not made, the registration is confirmed as a matter of law and the person requesting registration and all persons served shall be notified of the confirmation.

(f) Confirmation of a registered order, whether by operation of law or after notice and hearing, precludes further contest of the order with respect to any matter that could have been asserted



EXHIBIT F

at the time of registration. Added Stats 1999 ch 867 § 3 (SB 668).

 *Cal. Fam. Law Practice & Procedure 2d (Matthew Bender®), ch 32, Jurisdiction to Determine Custody and Visitation § 32.20. Cal. Fam. Law Practice & Procedure 2d (Matthew Bender®), ch 32, Jurisdiction to Determine Custody and Visitation § 32.49. Cal. Fam. Law Practice & Procedure 2d (Matthew Bender®), ch 32, Jurisdiction to Determine Custody and Visitation § 32.105. Cal. Fam. Law Practice & Procedure 2d (Matthew Bender®), ch 32, Jurisdiction to Determine Custody and Visitation § 32.110. Cal. Fam. Law Practice & Procedure 2d (Matthew Bender®), ch 142, Special Remedies for Enforcement of Custody and Visitation Orders § 142.100. Cal. Fam. Law Practice & Procedure 2d (Matthew Bender®), ch 142, Special Remedies for Enforcement of Custody and Visitation Orders § 142.101. Cal. Fam. Law Practice & Procedure 2d (Matthew Bender®), ch 142, Special Remedies for Enforcement of Custody and Visitation Orders § 142.102. Cal. Fam. Law Practice & Procedure 2d (Matthew Bender®), ch 142, Special Remedies for Enforcement of Custody and Visitation Orders § 142.103. Cal. Fam. Law Practice & Procedure 2d (Matthew Bender®), ch 142, Special Remedies for Enforcement of Custody and Visitation Orders § 142.106. Cal. Fam. Law Practice & Procedure 2d (Matthew Bender®), ch 142, Special Remedies for Enforcement of Custody and Visitation Orders § 142.210. Cal. Forms Pleading & Practice (Matthew Bender®) ch 260 "Family Law Enforcement: Foreign Judgments". Cal. Forms Pleading & Practice (Matthew Bender®) ch 394 "Parent and Child". 10 Within Summary (10th ed) Parent and Child §§ 161, 187, 188.*

## § 3446. Recognition and enforcement of determination by another state

(a) A court of this state may grant any relief normally available under the law of this state to enforce a registered child custody determination made by a court of another state.

(b) A court of this state shall recognize and enforce, but may not modify, except in accordance with Chapter 2 (commencing with Section 3421), a registered child custody determination of a court of another state. Added Stats 1999 ch 867 § 3 (SB 668).

*Cal. Fam. Law Practice & Procedure 2d (Matthew Bender®), ch 32, Jurisdiction to Determine Custody and Visitation § 32.20. Cal. Fam. Law Practice & Procedure 2d (Matthew Bender®), ch 32, Jurisdiction to Determine Custody and Visitation § 32.49. Cal. Fam. Law Practice & Procedure 2d (Matthew Bender®), ch 32, Jurisdiction to Determine Custody and Visitation § 32.105. Cal. Fam. Law Practice & Procedure 2d (Matthew Bender®), ch 142, Special Remedies for Enforcement of Custody and Visitation Orders § 142.100. Cal. Fam. Law Practice & Procedure 2d (Matthew Bender®), ch 142, Special Remedies for Enforcement of Custody and Visitation Orders § 142.104. Cal. Fam. Law Practice & Procedure 2d (Matthew Bender®), ch 142, Special Remedies for Enforcement of Custody and Visitation Orders § 142.106. Cal. Fam. Law Practice & Procedure 2d (Matthew Bender®), ch 142, Special Remedies for Enforcement of Custody and Visitation Orders § 142.107. Cal. Fam. Law Practice & Procedure 2d (Matthew Bender®), ch 142, Special Remedies for Enforcement of Custody and Visitation Orders § 142.108. Cal. Forms Pleading & Practice (Matthew Bender®) ch 260 "Family*

*Law Enforcement: Foreign Judgments". 10 Within Summary (10th ed) Parent and Child § 185.*

## § 3447. Enforcement proceeding that is contemporaneous with modification proceeding in another state

If a proceeding for enforcement under this chapter is commenced in a court of this state and the court determines that a proceeding to modify the determination is pending in a court of another state having jurisdiction to modify the determination under Chapter 2 (commencing with Section 3421), the enforcing court shall immediately communicate with the modifying court. The proceeding for enforcement continues unless the enforcing court, after consultation with the modifying court, stays or dismisses the proceeding. Added Stats 1999 ch 867 § 3 (SB 668).

*Cal. Fam. Law Practice & Procedure 2d (Matthew Bender®), ch 142, Special Remedies for Enforcement of Custody and Visitation Orders § 142.105. Cal. Fam. Law Practice & Procedure 2d (Matthew Bender®), ch 142, Special Remedies for Enforcement of Custody and Visitation Orders § 142.106. Cal. Fam. Law Practice & Procedure 2d (Matthew Bender®), ch 142, Special Remedies for Enforcement of Custody and Visitation Orders § 142.107. Cal. Fam. Law Practice & Procedure 2d (Matthew Bender®), ch 142, Special Remedies for Enforcement of Custody and Visitation Orders § 142.108. Cal. Forms Pleading & Practice (Matthew Bender®) ch 260 "Family Law Enforcement: Foreign Judgments". 10 Within Summary (10th ed) Parent and Child §§ 174, 186.*

## § 3448. Verification of petition; Contents; Orders; Hearing

(a) A petition under this chapter must be verified. Certified copies of all orders sought to be enforced and of any order confirming registration must be attached to the petition. A copy of a certified copy of an order may be attached instead of the original.

(b) A petition for enforcement of a child custody determination must state all of the following:

(1) Whether the court that issued the determination identified the jurisdictional basis it relied upon in exercising jurisdiction and, if so, what the basis was.

(2) Whether the determination for which enforcement is sought has been vacated, stayed, or modified by a court whose decision must be enforced under this part and, if so, identify the court, the case number, and the nature of the proceeding.

(3) Whether any proceeding has been commenced that could affect the current proceeding, including proceedings relating to domestic violence, protective orders, termination of parental rights, and adoptions and, if so, identify the court, the case number, and the nature of the proceeding.

(4) The present physical address of the child and the respondent, if known.

(5) Whether relief in addition to the immediate physical custody of the child and attorney's fees is



at the time of registration. Added Stats 1999 ch 867 § 3 (SB 668).

➥ *Cal. Fam. Law Practice & Procedure 2d (Matthew Bender®), ch 32, Jurisdiction to Determine Custody and Visitation § 32.20. Cal. Fam. Law Practice & Procedure 2d (Matthew Bender®), ch 32, Jurisdiction to Determine Custody and Visitation § 32.49. Cal. Fam. Law Practice & Procedure 2d (Matthew Bender®), ch 32, Jurisdiction to Determine Custody and Visitation § 32.105. Cal. Fam. Law Practice & Procedure 2d (Matthew Bender®), ch 32, Jurisdiction to Determine Custody and Visitation § 32.110. Cal. Fam. Law Practice & Procedure 2d (Matthew Bender®), ch 142, Special Remedies for Enforcement of Custody and Visitation Orders § 142.100. Cal. Fam. Law Practice & Procedure 2d (Matthew Bender®), ch 142, Special Remedies for Enforcement of Custody and Visitation Orders § 142.101. Cal. Fam. Law Practice & Procedure 2d (Matthew Bender®), ch 142, Special Remedies for Enforcement of Custody and Visitation Orders § 142.102. Cal. Fam. Law Practice & Procedure 2d (Matthew Bender®), ch 142, Special Remedies for Enforcement of Custody and Visitation Orders § 142.103. Cal. Fam. Law Practice & Procedure 2d (Matthew Bender®), ch 142, Special Remedies for Enforcement of Custody and Visitation Orders § 142.106. Cal. Fam. Law Practice & Procedure 2d (Matthew Bender®), ch 142, Special Remedies for Enforcement of Custody and Visitation Orders § 142.210. Cal. Forms Pleading & Practice (Matthew Bender®) ch 260 "Family Law Enforcement: Foreign Judgments". Cal. Forms Pleading & Practice (Matthew Bender®) ch 394 "Parent and Child". 10 Witkin Summary (10th ed) Parent and Child §§ 161, 187, 188.*

### § 3446. Recognition and enforcement of determination by another state

(a) A court of this state may grant any relief normally available under the law of this state to enforce a registered child custody determination made by a court of another state.

(b) A court of this state shall recognize and enforce, but may not modify, except in accordance with Chapter 2 (commencing with Section 3421), a registered child custody determination of a court of another state. Added Stats 1999 ch 867 § 3 (SB 668).

➥ *Cal. Fam. Law Practice & Procedure 2d (Matthew Bender®), ch 32, Jurisdiction to Determine Custody and Visitation § 32.20. Cal. Fam. Law Practice & Procedure 2d (Matthew Bender®), ch 32, Jurisdiction to Determine Custody and Visitation § 32.49. Cal. Fam. Law Practice & Procedure 2d (Matthew Bender®), ch 32, Jurisdiction to Determine Custody and Visitation § 32.105. Cal. Fam. Law Practice & Procedure 2d (Matthew Bender®), ch 142, Special Remedies for Enforcement of Custody and Visitation Orders § 142.100. Cal. Fam. Law Practice & Procedure 2d (Matthew Bender®), ch 142, Special Remedies for Enforcement of Custody and Visitation Orders § 142.104. Cal. Fam. Law Practice & Procedure 2d (Matthew Bender®), ch 142, Special Remedies for Enforcement of Custody and Visitation Orders § 142.106. Cal. Fam. Law Practice & Procedure 2d (Matthew Bender®), ch 142, Special Remedies for Enforcement of Custody and Visitation Orders § 142.107. Cal. Fam. Law Practice & Procedure 2d (Matthew Bender®), ch 142, Special Remedies for Enforcement of Custody and Visitation Orders § 142.108. Cal. Forms Pleading & Practice (Matthew Bender®) ch 260 "Family*

*Law Enforcement: Foreign Judgments". 10 Witkin Summary (10th ed) Parent and Child § 185.*

### § 3447. Enforcement proceeding that is contemporaneous with modification proceeding in another state

If a proceeding for enforcement under this chapter is commenced in a court of this state and the court determines that a proceeding to modify the determination is pending in a court of another state having jurisdiction to modify the determination under Chapter 2 (commencing with Section 3421), the enforcing court shall immediately communicate with the modifying court. The proceeding for enforcement continues unless the enforcing court, after consultation with the modifying court, stays or dismisses the proceeding. Added Stats 1999 ch 867 § 3 (SB 668).

➥ *Cal. Fam. Law Practice & Procedure 2d (Matthew Bender®), ch 142, Special Remedies for Enforcement of Custody and Visitation Orders § 142.105. Cal. Fam. Law Practice & Procedure 2d (Matthew Bender®), ch 142, Special Remedies for Enforcement of Custody and Visitation Orders § 142.106. Cal. Fam. Law Practice & Procedure 2d (Matthew Bender®), ch 142, Special Remedies for Enforcement of Custody and Visitation Orders § 142.107. Cal. Fam. Law Practice & Procedure 2d (Matthew Bender®), ch 142, Special Remedies for Enforcement of Custody and Visitation Orders § 142.108. Cal. Forms Pleading & Practice (Matthew Bender®) ch 260 "Family Law Enforcement: Foreign Judgments". 10 Witkin Summary (10th ed) Parent and Child §§ 174, 186.*

### § 3448. Verification of petition; Contents; Orders; Hearing

(a) A petition under this chapter must be verified. Certified copies of all orders sought to be enforced and of any order confirming registration must be attached to the petition. A copy of a certified copy of an order may be attached instead of the original.

(b) A petition for enforcement of a child custody determination must state all of the following:

(1) Whether the court that issued the determination identified the jurisdictional basis it relied upon in exercising jurisdiction and, if so, what the basis was.

(2) Whether the determination for which enforcement is sought has been vacated, stayed, or modified by a court whose decision must be enforced under this part and, if so, identify the court, the case number, and the nature of the proceeding.

(3) Whether any proceeding has been commenced that could affect the current proceeding, including proceedings relating to domestic violence, protective orders, termination of parental rights, and adoptions and, if so, identify the court, the case number, and the nature of the proceeding.

(4) The present physical address of the child and the respondent, if known.

(5) Whether relief in addition to the immediate physical custody of the child and attorney's fees is



EXHIBIT G